IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UGOCHUKWU LAZARUS ONEBUNNE, | : : | MOTION TO VACATE 28 U.S.C. § 2255 |
| Movant, | : : | |
| v. | : : | CRIMINAL ACTION NO. 1:18-CR-0092-TCB-LTW-2 |
| | : | |
| UNITED SATES OF AMERICA, | : | CIVIL ACTION NO. |
| Respondent. | : | 1:20-CV-4667-TCB-LTW |

## FINAL REPORT AND RECOMMENDATION

This matter has been submitted to the undersigned Magistrate Judge for consideration of Ugochukwu Lazarus Onebunne's pro se motion under 28 U.S.C. § 2255 (Doc. 142), the government's response thereto (Doc. 150), and Onebunne's reply (Doc. 152). For the reasons that follow, the undersigned **RECOMMENDS** that Onebunne's § 2255 motion [142] be **DENIED**.

### I. Procedural History

A federal grand jury in the Northern District of Georgia returned a forty-five count, superseding indictment against Onebunne and co-defendant Olu Victor Alonge, charging Onebunne in Count One with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, in Count Fifteen with wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, in Count Thirty with conspiracy to launder money, in

violation of 18 U.S.C. § 1956(h), in Counts Forty through Forty-Four with aggravated identify theft, in violation of 18 U.S.C. §§ 1028A and 2, and in Count Forty-Five with possession with intent to use unlawfully five or more identification documents, in violation of §§ 1028A(a)(3)&(b)(2)(B) and 2.  (Doc. 46.) Represented by retained attorney R. Gary Spencer, Onebunne pled guilty to Count One pursuant to a negotiated plea agreement in which the government agreed to dismiss the remaining counts. (Doc. 56-1.) Onebunne signed the plea agreement and a separate certification section, which stated, in relevant part:

> I have read the Indictment against me and have discussed it with my attorney. I understand the charges and the elements of each charge that the Government would have to prove to convict me at trial. I have read the foregoing Plea Agreement and have carefully reviewed every part of it with my attorney. I understand the terms and conditions contained in the Plea Agreement, and I voluntarily agree to them. . . No one has threatened or forced me to plead guilty, and no promises or inducements have been made to me other than those discussed in the Plea Agreement.

(*Id.* at 21-22.)

At the plea hearing, Onebunne was placed under oath and confirmed that he had signed the plea agreement, that he wanted to plead guilty, and that he understood the rights he was giving up by pleading guilty. (Doc. 61 at 2-5.) Onebunne also acknowledged that he understood that he was pleading guilty to wire fraud conspiracy. (*Id.* at 5-6.) Onebunne faced a possible maximum sentence

of twenty years of imprisonment and understood that the Court would consider the United States Sentencing Guidelines but was free to impose a sentence outside of the advisory guidelines range, that the Court was not bound by any sentencing recommendations set forth in the plea agreement, and that, if his sentence was more severe than he expected, he would have no right to withdraw his plea. (*Id.* at 6-7, 9.) Onebunne confirmed that he was entering the plea of his own free will and volition and that it was not the result of force, threats, or promises anyone made other than those contained in the plea agreement. (*Id.* at 8-9.)

Next, the government summarized what the evidence would show if the case went to trial, namely that Onebunne "knowingly and intentionally participate[d] as an aider and abettor in a romance fraud scheme for approximately one year from about January 2017 through about February 2018 in the Northern District of Georgia and elsewhere." (*Id.* at 9-10.) The government further explained,

> The participants in the scheme to defraud targeted individual users of online dating websites to defraud those individuals of money and property by falsely posing as potential boyfriends or girlfriends through the use of fictitious personas and material false representations.
>
> At the relevant time Mr. Onebunne lived in and around Atlanta, Georgia, and the victims lived mostly in other states including North Dakota, California and Texas.

> The fraudsters involved in the romance scheme created phone dating profiles that depicted photographs of attractive men and women that in some instances were public figures taken from publicly available websites. The phony profiles used names that were fictitious and misappropriated.
>
> The fraudsters then used their fake online personas to express strong romantic interest in the targeted users and spent weeks and even months cultivating romantic relationships with them through online messaging, text messages and voice calls.
>
> After gaining their affection and trust, the fraudsters provided the targeted users with elaborate false stories to cause them to send money through interstate wire or online transfers to bank accounts. Some of these bank accounts were controlled by . . . Onebunne . . . and other conspirators.
>
> The fake boyfriends or girlfriends often claimed to be working overseas and in need of money to travel back to the United States or complete business deals abroad. The victims often sent money as directed based on these false pretenses. The victims later reported that they would never have sent the money had they known the true identities of their purported online boyfriends or girlfriends.
>
> Once . . . Onebunne . . . and the other conspirators received money from the victims, they quickly withdrew the funds and dispersed them into other accounts, domestically and abroad, in order to conceal the source of the ill-gotten funds and in order to further promote the ongoing scheme to defraud, including by sending the proceeds of the fraud to other individuals who helped to effectuate the scheme to defraud, including the people who actually chatted with the victims.

(*Id.* at 10-11.) Onebunne understood and agreed with the government's description and admitted that he was guilty of the crime charged in Count One. (*Id.* at 11-12.)

At sentencing, the Court determined that Onebunne's guideline range was 57 to 71 months of imprisonment but imposed a sentence of 120 months of imprisonment. (Doc. 114 at 2-3, 10; Doc. 104.) On August 6, 2020, the United States Court Appeals for the Eleventh Circuit affirmed Onebunne's sentence. (Doc. 122.)

Onebunne timely filed this §2255 motion, arguing that counsel provided him ineffective assistance by: (1) misadvising him that he was guilty of Count One merely because he benefited financially from the offenses committed by his friends, even though he did not contact or mislead any of the victims and did not know that his friends were committing crimes; (2) advising him that trial "was not an option due to [his] financial constraints"; (3) failing to fully explain the plea agreement to him; (4) failing to advise him that "aiding and abetting is a charge distinct from a conspiracy"; and (5) advising him to plead guilty even though counsel knew that he was actually innocent. (Doc. 142 at 2-3.) The government responds, in pertinent part, that Onebunne has failed to show that he was prejudiced by counsel's alleged errors. (Doc. 150 at 13-16.) In his reply, Onebunne asserts "that he was unaware of the fraudulent scheme until *after* it was devised and fully executed," "that counsel essentially advised that his lack of knowledge was irrelevant," and that,

had counsel not misadvised him, he would have proceeded to trial rather than enter a guilty plea. (Doc. 152 at 3-4.)

## II.     Legal Standards

To prevail on a § 2255 motion, the movant must demonstrate that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such a sentence; (3) the sentence exceeded the maximum sentence authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255. "To obtain collateral relief, a [movant] must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). An evidentiary hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Based on the record before the Court, the undersigned finds that an evidentiary hearing is not required in this case. *See Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991) (noting that, although prisoner seeking collateral relief is entitled to evidentiary hearing if relief is warranted by facts he alleges, which court must accept as true, hearing is not required if record conclusively demonstrates that no relief is warranted).

To establish ineffective assistance of counsel, a § 2255 movant must show that his counsel's performance was deficient such that it was below objectively

6

reasonable standards, and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 688, 692 (1984). As for the first prong of the test, a court should be "highly deferential" in scrutinizing counsel's performance, *id.* at 689, and "must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment," *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir. 2000). To establish deficient performance, a movant must establish that no competent lawyer would have taken the action that his lawyer took. *Id.* at 1315.

Under the second prong of the test, a court determines whether counsel's challenged acts or omissions prejudiced the movant, i.e., whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

A court need not address both prongs of *Strickland*'s test if the movant "makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.*

To succeed on a claim that a guilty plea was obtained as the result of ineffective assistance of counsel, a § 2255 movant must show that the advice he received from counsel "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 57, 59 (1985) (citations omitted). Counsel is required to provide defendant sufficient information to make an informed and knowing decision to plead guilty, including "all of the information counsel had (and reasonably should have had)" and must offer defendant "reasonable advice" based on that information. *Davidson v. United States*, 138 F. App'x 238, 240 (11th Cir. 2005) (per curiam). Defendant has the burden of affirmatively proving prejudice. *Gilreath v. Head*, 234 F.3d 547, 551 (11th Cir. 2000). Additionally,

> the representations of the defendant, his lawyer, and the prosecutor at [a guilty plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

### III. Analysis

Onebunne asserts that counsel failed to adequately explain the charge against him and the difference between an aider and abettor and a conspirator and advised him to plead guilty knowing that he was innocent. However, Onebunne acknowledged at the plea hearing that he understood the nature of the charge against him and that he understood and agreed with the government's description of the evidence against him, including that he controlled bank account(s) that received money from the victims and quickly withdrew and dispersed that money to other accounts **in order to conceal their source and to further promote the ongoing fraudulent scheme**. (Doc. 61 at 5-6, 11.) Onebunne further confirmed that he was entering the plea of his own free will and volition and that it was not the result of force, threats, or promises anyone made other than those contained in the plea agreement. (*Id.* at 8-9.) Onebunne has not met his "heavy burden" to show that the statements he made during his plea colloquy were false, and his after-the-fact assertion that he is actually innocent because he did not know about his friends' agreement to engage in wire fraud is insufficient to rebut the presumption that those statements were true and correct. Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007) (per curiam).

As to Onebunne's assertions that counsel told him that he could not afford a trial, the Court advised him, during the plea colloquy, that he had a right to a jury trial and a right to court-appointed counsel at trial and at every other stage of the proceedings. (Doc. 61 at 5.) Onebunne acknowledged that he understood those rights. (*Id.*) Thus, even if counsel advised him otherwise, counsel's error "was cured by the district court." United States v. Wilson, 245 F. App'x 10, 12 (11th Cir. 2007) (per curiam).

Moreover, the separate certification section of the plea agreement, which Onebunne signed, states that Onebunne understood the elements of the charge against him and that he had read the plea agreement and "carefully reviewed every part of it with [his] attorney." (Doc. 56-1 at 22; Doc. 61 at 3.) "A defendant is not at liberty to ignore the documents she signs or the instructions provided by the district court." *Kealy v. United States*, 722 F. App'x 938, 946 (11th Cir. 2018) (per curiam). Therefore, Onebunne is not entitled to relief.

### IV.    Certificate of Appealability

A federal prisoner may not appeal the denial of his § 2255 motion "unless a circuit justice or a circuit or district judge issues a certificate of appealability ["COA"] under 28 U.S.C. § 2253(c)." Fed. R. App. P. 22(b)(1). Rule 11 of the

Rules Governing § 2255 Cases provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A substantial showing of the denial of a constitutional right "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citations and quotation marks omitted).

A COA is not warranted here because, based on the foregoing discussion of Onebunne's grounds for relief, the resolution of the issues presented is not debatable by jurists of reason.

## V.     Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that Onebunne's § 2255 motion [142] and a COA be **DENIED** and that civil action number 1:20-CV-4667-TCB-LTW be **DISMISSED**.

**SO RECOMMENDED**, this   20   day of   January  , 2021.

*Linda T. Walker*
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE